### OLIVER COWLS vs. RUFUS HASTINGS.

Under the Rev. Sts. c. 73, § 23, which require an officer, in the return of his doings in the levy of an execution on land, to set forth the time when the premises were taken on execution, his return is sufficient, if it state the day of the taking, without mention of the hour and minute ; and it is also sufficient, if it set forth acts which constitute a taking, without expressly averring it.

An officer, under date of September 25th, made a return on an execution, stating that he, pursuant to said execution, had caused three discreet and disinterested freehold ers of the county to be sworn, as appeared in the magistrate's certificate, and that they afterwards viewed the land described in their certificate of appraisement, and that he extended the execution on said land, and delivered seizin and possession thereof to the execution creditor: He also made the certificates of the magistrate and of the appraisers a part of his return : The certificate of the magistrate was, that the appraisers were sworn before him on the 16th of October : The certificate of the appraisers was dated September 25th, and stated that they, having been first sworn, viewed the land and appraised it. *Held,* that it sufficiently appeared from the return, 1st, that the appraisers were sworn before they viewed and appraised the land, and 2d, that the officer took the land, on the execution, on the 25th of September ; and that the levy was valid.

THIS was a writ of *scire facias*, requiring the defendant to show cause why an alias execution should not be issued on a judgment recovered against him by the plaintiff, pursuant to the Rev. Sts. c. 73, § 21, on the ground that the land, on which the original execution was levied, could not be held by the plaintiff. The case was submitted to the court on the statement of facts which follows :

At the court of common pleas, held at Northampton in August 1843, the plaintiff recovered judgment against the defendant for the sum of $741·72 damage, and $10·51 costs. Execution issued on this judgment, on the 4th of September 1843, and was delivered to Ivers Phillips, a deputy of the sheriff of Worcester, who returned it with the following certificates, &c. indorsed thereon :

" Worcester ss. September 25th 1843.    Then personally appeared before me the subscriber, one of the justices of the peace within and for said county of Worcester, Alpheus Merrifield, and made solemn oath that he would faithfully and impartially appraise such real estate as should be shown to him to satisfy this execution and all costs.    Thomas Kinnicutt, Justice of the Peace.

" Worcester ss. October 16th 1843. Then personally appeared before me the subscriber, one of the justices of the peace within and for said county of Worcester, Hezekiah Gibbs and James Pitts, and made solemn oath that they would faithfully and impartially appraise such real estate as should be shown to them to satisfy this execution and all costs. Wm. H. Moore, Justice of the Peace.

" We, the subscribers, inhabitants of the county of Worcester, being chosen to appraise such real estate as should be shown to us as the property of the within named Rufus Hastings, the debtor, to satisfy this execution, having been first sworn, have viewed the following described premises, which we have appraised at five hundred and ten dollars and eighty five cents, which we have set out, by metes and bounds, to the said Oliver Cowls, the creditor, to hold to him, his heirs and assigns forever, as follows, viz. (describing the premises by metes and bounds.) Alpheus Merrifield. Hezekiah Gibbs. James Pitts.

" Worcester ss. September 25th 1843. Pursuant to the within execution, I have caused three disinterested and discreet persons, freeholders of said county, to be sworn as above, viz. Alpheus Merrifield, chosen by the within named Cowls, the creditor, Hezekiah Gibbs, chosen by the within named Hastings, the debtor, and James Pitts, chosen by myself, who afterwards viewed the above described premises, which were shown them, by the said creditor, as the estate of the within named debtor, and I have extended this execution on said described land by said appraisers appraised at five hundred and ten dollars and eighty five cents, which is in part satisfaction of this execution, and I have delivered seizin and possession of the same, with the appurtenances thereof, to the said creditor, by metes and bounds, as by the certificate of the justices and appraisers above written, and which are to be taken as parts of this return. To have and to hold the same to the said Oliver Cowls, and his heirs and assigns forever, in part satisfaction of this execution, as by the receipt of his attorney hereon. From said last mentioned sum I have deducted

Cowls *v.* Hastings.

seventeen dollars and fifty cents for my fees and the charges of levy, and have applied four hundred and ninety three dollars and thirty five cents in part satisfaction of the debt and costs of this execution, and return the same unsatisfied for the balance. Fees and charges : Levy, $9·10. Travel, $0·60. Paid appraisers, $5·40. Surveyor, $1.· Recording execution, $1. Paid justices, $0·40 — $17·50. Ivers Phillips, D. Sheriff.

" Worcester ss. September 25th, 1843. Received of Ivers Phillips, a deputy sheriff of the county of Worcester, seizin and possession of the above described real estate, in part satisfaction of this execution.                    Oliver Cowls,

" By his attorney, Thomas Kinnicutt."

Said execution and the foregoing return and certificates were recorded in the registry of deeds for the county of Worcester, on the 14th of November 1843.

Alias execution to issue, if the levy aforesaid is void, and if the plaintiff is entitled to an alias ; otherwise, judgment to be rendered for the defendant for costs.

*Delano*, for the plaintiff.

*Forbes*, for the defendant.

DEWEY, J. Two objections are taken to the validity of the levy in question. 1st. That it does not appear that the appraisers were duly sworn before entering upon the discharge of their duty. This objection arises from certain apparent discrepancies in the time of administering the oath, as indicated in the accompanying certificates of the various proceedings connected with the levy, and returned with the doings of the officer making the levy. Taking the return of the officer and that of the appraisers merely, all seems to correspond, and no conflict arises. The only difficulty that would then exist would be the want of the particular averment that the oath was administered by a justice of the peace ; which was held requisite, in *Chamberlain* v. *Doty*, 18 Pick. 495. It becomes necessary, therefore, to refer to the certificates of the magistrates, as to the proper oath being taken by the appraisers ; and they are distinctly referred to by the officer, and adopted and recognized as part of the return of the levy

Hence arises the difficulty ; the certificate of one magistrate stating the oath to have been administered to two of the appraisers on the 16th of October 1843, a time later than the apparent time of making the levy and appraisement, which purport to have taken place September 25th 1843.

We think two answers may be given to this objection as to the time of administering the oath to the appraisers ; or rather, two modes suggest themselves of viewing this apparent difficulty ; either of which sufficiently answers the objection relied on. *First.* If there be this apparent discrepancy in dates — the certificates of the officer and the appraisers differing from that of the magistrate — the two former, being more especially certificates required by law than that of the magistrate, must control. We are aware that it is said the officer has adopted the certificate of the magistrate, and has therefore vouched for its entire accuracy, as well as to the date as the fact of the administration of the oath. But we think this is not so. Such would have been the result, if the certificate of the officer had been silent as to the time of administering the oath, and did not conflict with that of the magistrate. But his entire certificate is to have effect ; and if his adoption of the certificate of the magistrate is accompanied with qualifying or negative allegations, the officer's return is to be taken with those qualifications. Now, the officer most clearly states that the appraisers, having been sworn, "afterwards viewed the premises," &c. The certificate of the appraisers is still more direct and explicit as to the fact that they were sworn before proceeding to make their appraisement. They say, "we the subscribers, having been first sworn, have viewed the following described premises, which we have appraised," &c. These certificates, if true, show most clearly that the oath was administered before the appraisement, be that when it may. If the appraisement was on or before the 25th of September 1843, then the time of administering the oath is erroneously stated by the magistrate. If it be necessary to reject either of the dates, we may reject that of the magistrate of 16th October ; and such rejection would seem to be well

authorized by the case of *Shove* v. *Dow,* 13 Mass. 534.    And in this mode we think the objection taken may be obviated, and the levy held good.

*Secondly.*    Another view that may also be taken is, that the levy may be considered as taking effect from the time of the original seizure or taking of the land on the execution, and so the officer might, in carrying out this principle, date his entire proceedings as of the day of the commencement o. the levy, although the further proceedings, in the completion of the levy, might take place at a day subsequent to the seizure.    Rev. Sts. *c.* 73, § 22.    *Hall* v. *Hoxie,* 3 Met. 253.    This view of the question would give full force and effect to all the certificates and returns appertaining to this levy, and avoid all objections arising from discrepancy of dates.    Suppose the levy to have been commenced on the 25th of September by making the seizure at that date, but the appraisement not made until the 16th of October ; the oath might then properly have been administered on the 16th of October ; the appraisers would then be duly qualified to act ; they might, subsequently to that day, have made their appraisement ; and the levy be thus completed in regular, successive order of events, although the form of the certificate of the officer, standing alone, might indicate that the proceedings took place at an earlier date.    With the statute provision, that he levy shall be considered as made at the time when the and is taken, it would seem reasonable to give the officer's certificate the construction, that it had reference to the commencement of the proceedings, and not the consummation of the levy ; especially where the dates of the subsequent proceedings are stated in the certificate of the magistrate or appraisers, and such construction is consistent with entire verity in the different certificates, and renders them all harmonious.

The court are therefore of opinion, that this levy is not invalid by reason of any defect in the matter of the due administration of the oath to the appraisers.

2d.    It is further objected to the validity of this levy, that the return by the officer does not set forth the time when the

premises were taken on the execution. As to the suggestion that the precise point of time, even to the designation of the hour of the day when the land is taken, must be stated in the return, in order to render the levy valid, we perceive no statute provision requiring it. Under the general enactment requiring the officer to state the time when the premises were taken on the execution, we understand that the day, and not the particular hour and minute, is to be stated. A different provision will be found in the registry law, Rev. Sts. c. 59, § 24, requiring the register to note "the day, hour and minute of reception" of each deed.

The more serious objection under this second head, and one more strongly urged, is, that there is an entire omission to set forth the day on which the premises were taken on the execution. This is required by the statute, (Rev. Sts. c. 73, § 23,) and unless it is substantially complied with, the return is defective. It is conceded by the defendant's counsel, that this is not directly stated in the words of the statute requisition ; but it is said to be necessarily implied in the statement contained in the return of the officer. He has returned that on 25th of September 1843, he "extended this execution on said described land." This certificate of the time of extending the execution is a good certificate to show that the premises were taken on execution on the 25th of September 1843. See *Childs* v. *Barrows*, (*ante*, 413.) It certainly imports a taking on execution, at a date as early as that. An extending of an execution on real estate necessarily includes a taking of the premises on execution, and it fixes the time of the taking at the same period with the completing of the extent, when no further recital is found in the return. We do not mean to suggest that a return of a levy, technically and carefully drawn, should not set forth distinctly the time of the original taking ; and especially if such taking on execution be the original lien by way of seizure, and the object be to secure a priority as regards other creditors.

The argument of the plaintiff has pressed upon our consideration various supposed cases of conflicting rights arising

under different levies, and the necessity that would arise, in such cases, of direct averments, in the return, of the time of the taking on execution, with a view of settling questions of priority among the various creditors who might make levies. It is sufficient to say, that no such conflict arises here. No other levy was made upon the premises, prior to the time when the officer certifies that he extended the execution of the plaintiff. The result to which we have come on this point is, that the certificate of the officer, stating the execution to have been extended on the 25th of September 1843, is a good averment of the taking of the premises in execution on that day, and that the omission to set forth more particularly, in a distinct recital, the time of the original taking does not vitiate the levy; but that the same is good as a levy made on the 25th of September. As such, it avails the plaintiff and vests in him a good title to the land levied on; and he has therefore sustained no injury through any defect in the return.

*Judgment for the defendant for costs.*